IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

---

ENCORE MEDICAL, L.P.

    Plaintiff,

v.

JAY KENNEDY, D.C.; GEOFFREY
MISCOE; MIR-COM PRODUCTS, LLC;
BRYANNE ENTERPRISES, INC.; and
MIG RUNNER, LLC a/k/a MRP,

    Defendants.

Case No. 1:11-cv-00187

---

### BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
### AS TO THE COUNTERCLAIM IN DECLARATORY JUDGMENT

---

*Introduction*

At issue in this Motion is the interpretation of a June 25, 2002, contract between Jay Kennedy, D.C., and Encore Medical, L.P. Specifically, this Motion calls upon the Court to analyze that contract with reference to a recently filed Counterclaim for Declaratory Judgment. In the Counterclaim count, Dr. Kennedy focuses this Court's attention on the application of Paragraph 8, "COVENANT NOT TO COMPETE" regarding the two subjects of the contract, namely, "the Machine" and "the Product." *(See Counterclaim ¶¶ 4 and 5.)*

Encore states that:

> ". . . pursuant to the clear and unambiguous language of the Product Agreement, the Product Agreement has a 10-year term commencing on June 25, 2002, and ending on June 25, 2012, at which time the two-year covenant not to compete contained in Paragraph 8 of the Product Agreement will commence, ending on June 25, 2014." *(Answer to Jay Kennedy, D.C.'s Counterclaim for Declaratory Judgment).*

{01654710.DOC 2}

As is obvious from prior submissions, Dr. Kennedy posits that the Product Agreement pertained to two subjects "the Product" and "the Machine" <u>and</u> that the term was apportioned into Base Term and Extended Term. Encore argues that Paragraph 8, "COVENANT NOT TO COMPETE" begins to run for <u>both</u> "the Product" and "the Machine" on June 25, 2012. While Dr. Kennedy agrees with Encore that the Covenant Not To Compete <u>as to "the Product"</u> begins running on June 25, 2012, Dr. Kennedy maintains that the COVENANT NOT TO COMPETE began running <u>as to "the Machine"</u> upon the expiration of the Base Term, namely June 25, 2006.

## *Issue*

The foregoing gives rise to a straightforward issue:

> ***IS THE PRODUCT AGREEMENT AMBIGUOUS WITH RESPECT TO WHEN PARAGRAPH 8 COVENANT NOT TO COMPETE BEGINS RUNNING?***

Answer: Yes.

## *Discussion*

There is no Product Agreement per se. The actual Agreement is labeled "Belts – Traction Pkg." Remember, the Agreement covers two subjects, belts (Product) and traction (Machine).

> "8. <u>COVENANT NOT TO COMPETE</u>.
>
> > During the term of this Agreement and for a period of two years from the date of expiration or termination of this Agreement, KENNEDY shall not participate in the creation, development, manufacture, distribution or sale of any product that is competitive with the Machine or the Product in the United States, unless requested or authorized to do so, in writing, by ENCORE."

If This Court finds that Paragraph 8, COVENANT NOT TO COMPETE, lends itself to more than one reasonable interpretation, then it is the interpretation of the non-scrivener (Dr. Kennedy) that must be enforced. For this reason, Encore has dug in its heels, admitting of no

{01654710.DOC 2}

other interpretation except theirs, and reiterating that the so-called Product Agreement is clear and unambiguous. In order for Dr. Kennedy to prevail on this Declaratory Judgment Counterclaim, he, as non-scrivener, need only show that his interpretation of the Product Agreement is reasonable. Dr. Kennedy is not required to prove that his understanding is superior to that of Encore, only that it is reasonable. In fact, Dr. Kennedy <u>does</u> hold to the more reasonable position, logically, linguistically, structurally. All this was laid out before in Dr. Kennedy's Brief In Support of Motion To Dissolve And For Summary Judgment, but in a different context. As matters unfolded, the Court is now confronted head-on with the pivotal question that lies at the heart of the two-plus years of injunction that Dr. Kennedy has been forced to abide. Because we have previously written about the ambiguity in Paragraph 8, we will restate our argument here from the argument appearing at pages 14-19 of Dr. Kennedy's Brief In Support of Motion To Dissolve And For Summary Judgment.

Encore has misinterpreted the Agreement as to when the Covenant Not To Compete becomes operative. Encore believes the Covenant Not To Compete is delayed for both the Machine and the Product until June 25, 2012, and expires on June 25, 2014. Dr. Kennedy believes the Covenant Not To Compete for the Machine began running on June 25, 2006.

In order to reconcile the parties' divergent views as to when the Covenant Not To Compete is activated, a thorough analysis of the Agreement as a whole is required. Then the several paragraphs can take their proper place within the document.

"1. **<u>TERM</u>**.

> The term of this Agreement shall begin on the Effective Date and shall continue for a period of ten years, or until the expiration of the last to expire of any U.S.

{01654710.DOC 2}

–3–

> Patent naming KENNEDY as an inventor or co-inventor that may be obtained by ENCORE relating to the Product or any part thereof, whichever is longer. The initial portion of the term of this Agreement, comprising four years unless earlier terminated as hereinafter provided, shall be referred to herein as the Base Term, and the portion of the term of this Agreement after the Base Term shall be referred to herein as the Extended Term."

The term of the Agreement was apportioned into two parts, an initial portion of four years defined as the Base Term, and that portion of the term of the Agreement <u>after</u> the Base Term, called the Extended Term. If a single, unified term of ten years were intended, then there would have been no purpose served by apportioning Paragraph 1 Term into components. Moreover, the Base Term under Paragraph 1 is four years <u>only if it has not been "earlier terminated</u>." We remind the Court that only the Base Term can be terminated. The Extended Term cannot be "earlier terminated." This is where the interplay of Paragraph 1 TERM and Paragraph 8 COVENANT NOT TO COMPETE manifests. Paragraph 8 provides a two year COVENANT NOT TO COMPETE ". . . from the date of expiration or termination." Since only the Base Term (pertaining to "the Machine") can be terminated, the COVENANT NOT TO COMPETE found in Paragraph 8 must relate to the Base Term.

The verb terminate is an active voice transitive verb. Some action is required in order to terminate. The Agreement gives Encore the right to terminate the Base Term, but not the Extended Term. Encore recognizes this fact. At Paragraph 39 of the original Complaint, it states: "Encore did not terminate the Base Term." The fact that the Base Term was not terminated does not alter the meaning of the Agreement. Obviously, an act of termination by Encore would have triggered the two-year Covenant Not To Compete in Paragraph 8 <u>as to the Machine</u>. The inclusion of Paragraph 39 in the original Complaint proves that Encore

{01654710.DOC 2}

–4–

understood the dichotomy between Base Term and Extended Term.

Now look at how Paragraph 3 fits into the contractual scheme.

> "3. <u>MARKETING OF THE PRODUCE AND THE MACHINE</u>.
>
> > ENCORE shall market the Product and the Machine to customers and potential customers in any market throughout the world. During the Base Term and the Extended Term, ENCORE shall pay to KENNEDY a Base Payment of $18 per unit for each unit of the Product sold. During the Base Term, ENCORE shall also pay to KENNEDY, in addition to the Base Payment, a Supplemental Payment for each unit of the Machine sold with the Product. The Supplemental Payment shall be $400 per unit for the first 100 units of the Machine sold with the Product during each year of the Base Term, and $500 per unit for all units of the Machine sold with the Product in excess of 100 during each year of the Base Term. If sales of the Machine with the Product during any year of the Base Term do not equal at least 100 units, ENCORE shall have the option to terminate the Base Term effective at the end of any such year by giving KENNEDY written notice thereof no later than 30 days after the end of such year."

Once again, the verb terminate appears as an active voice transitive verb and gives Encore the conditional option to terminate the Base Term, but not the Extended Term. Everywhere throughout the Agreement, Paragraphs 1, 3, and 8, TERMINATION refers exclusively, undeniably, and unequivocally to the Base Term. On the other hand, EXPIRATION <u>could</u> refer to Base Term, or Extended Term, or BOTH. The contractual language of Paragraph 8, Covenant Not To Compete offers no clear answer as to which "term" it unequivocally refers to thereby creating structural ambiguity on its face. Nevertheless, Paragraph 8 does refer to "expiration or <u>termination</u>." In so doing, Paragraph 8 must refer directly and purposefully to the Base Term, the only portion of the bifurcated apportioned Agreement where termination could apply.

Despite This Court's preliminary finding that the term of the Agreement is "clearly ten

{01654710.DOC 2}

–5–

years", Dr. Kennedy respectfully contends that the "term" is not "clearly ten years," and, moreover, Dr. Kennedy has complied with the contract he entered with Encore (See Memorandum Order dated June 11, 2011, Pg. 2). By this Motion and Brief, Dr. Kennedy seeks a careful review and declaration as to what the contract means.

Dr. Kennedy contends that the Base Term is not clearly ten years, or that Extended Term is six years – or any other number of years. By design, Paragraph 1 apportioned the durational component of the Agreement. Also by design, those portions were given separate names, i.e., Base Term and Extended Term. Legal consequences attach to each component of the bifurcated Agreement. Base Term and Extended Term are treated differently throughout the Agreement, including how Dr. Kennedy was to get paid, (Paragraph 3), limitations on ownership of New Developments, (Paragraph 4), and the commencing of the two-year Covenant Not To Compete, (Paragraph 8). A schematic chart is appended to this Brief to assist the Court in understanding the many permutations that contradict the "clearly ten years" approach and also to lend clarity to the instant analysis. (Exhibit " 1").

As written, only the Base Term can both terminate and expire. Paragraph 1,("TERM"), acknowledges this fact when it states ". . . four years unless earlier terminated as hereinafter provided, shall be referred to as the Base Term." In Paragraph 3, ("MARKETING PRODUCT AND MACHINE"), supplies the termination provision, stating "If sales of the Machine with the Product during any year of the Base Term do not equal at least 100 units, ENCORE shall have the option to terminate the Base Term. . ." Note that nowhere in the Agreement does ENCORE have the right to terminate the Extended Term, which pertains to the Product. The Extended

{01654710.DOC 2}

–6–

Term can only expire. The Base Term can expire and also be terminated. In fact, the Extended Term is also not "clearly ten years," but can be stretched out by as much as 20 more years due to the possibility of a U.S. Patent being issued, (stating ". . . ten years or until the last to expire of any U.S. Patent naming Kennedy as inventor or co-inventor that may be obtained by ENCORE relating to the Product of any part therefor, whichever is longer.").

The fact that only the Base Term can terminate and expire whereas the Extended Term can only expire becomes critical as it relates to Paragraph 8, COVENANT NOT TO COMPETE:

> "During the term of this Agreement and for a period of two years from the date of expiration or termination of this Agreement of this Agreement, KENNEDY shall not participate in the creation, development, manufacture, distribution or sale of any product that is competitive with the Machine or the Product in the United States, unless requested or authorized to do so, in writing, by ENCORE."

By choosing the words "expiration or termination" in Paragraph 8, the scrivener directly and purposefully referred to the Base Term (pertaining to Machine). Use of the word "terminate" in particular, establishes that the Covenant Not To Compete begins to run as to the Machine portion (Base Term) at an earlier date than the Product portion (Extended Term), because only the Base Term can be terminated. Therefore, it is Dr. Kennedy's position that at the end of the Base Term, whether by "termination" or "expiration", the two year Covenant Not To Compete began to run as to the Machine portion of the Agreement.

If the Covenant Not To Compete were not intended to apply to the Base Term, then there would be no reason to use the words "expiration or termination" and the word "expiration" alone would have been adequate. To illustrate the application of Dr. Kennedy's interpretation, suppose

{01654710.DOC 2}
–7–

Case 1:11-cv-00187-HSM-WBC   Document 11   Filed 08/09/11   Page 7 of 11   PageID #: 93

fewer than 100 units of the Machine had been sold during the second year of the Base Term, and ENCORE elected to terminate the Base Term by giving Dr. Kennedy 30 days written notice, per Paragraph 3. At that point, the two-year Covenant Not To Compete is triggered according to the plain language of Paragraph 8, "During the term of this Agreement and for a period of two years from the date of expiration <u>or termination</u> of this Agreement, Kennedy shall not participate. . .". *(Underlining added.)*

The inclusion in Paragraph 8 of the words "expiration or termination" was to directly and purposefully position the Base Term (that portion of the Agreement capable of expiration <u>and</u> termination) to the two-year end-of-term Covenant Not To Compete.

Encore's counsel wrote the Agreement *(Peetros Depo. Pgs. 36-37)* (Exhibit "2"), and in doing so, he used the phrase ". . . term of this Agreement" to confusingly refer to both Base Term and Extended Term. While in other parts of the Product Agreement, ENCORE defined the time periods of performance by use of the defined words "Base Term", "Extended Term", or "Base Term and Extended Term" (see, e.g. Paragraph Three, in which ENCORE agreed to pay Dr. Kennedy for units of the Product sold "during the Base Term and Extended Term"), ENCORE failed, when it drafted the Agreement, to define in Paragraph 8 the period of non-competition as either the Base Term, the Extended Term, or the "Base Term and Extended Term" (as it had done in Paragraph Three). But by definition, the Agreement must always be either Base Term or Extended Term. It can't be both. It is only <u>after</u> the Base Term has expired or been terminated that the Extended Term is born, ". . . and the portion of the term of this Agreement after the Base Term shall be referred to herein as the Extended Term." (¶1) So which is it, the Base Term or

the Extended Term that is being referred to in Paragraph 8?  Since the language of the Covenant Not To Compete uses the words "expiration or termination," and since only the Base Term can both expire or terminate, it follows that the scrivener intended the Covenant Not To Compete to be triggered by the "expiration or termination" of the Base Term.

    It might be argued that the words terminate and expire should not receive the careful attention we have given them, but that these words were used interchangeably and are merely redundant synonyms.  Let us examine this issue.  West Encyclopedia of American Law, 2nd Ed. 2008, states, "The termination or cancellation of a contract signifies a process whereby an end is put to whatever remains to be performed thereunder.  Termination generally refers to an ending, usually before the end of the anticipated term of the contract."  In contrast, "Expiration: when a statute is limited as to time, it expires by mere lapse of time."  To terminate involves an action, whereas to expire connotes passivity.  In Paragraph 1, for example, substituting the word "expired" for "terminated" would cause an absurd result (e.g., "The initial portion of this Agreement, comprising four years unless earlier <u>expired</u> as hereinafter provided. . .").  How does a four-year term expire earlier?  That becomes a contradiction.  Looking at Paragraph 3, one can see an equally twisted sentence upon substituting expire for terminate, " . . . ENCORE shall have the option to <u>expire</u> the Base Term effective at the end of any such year."

    Under the contractual scheme of the Agreement, the words terminate and expire cannot mean the same thing.  Each word was purposefully chosen to describe the parties' intentions, in this case, that at the end of the Base Term, whether by expiration or termination, the Covenant Not To Compete as to the Machine was activated.

{01654710.DOC 2}

–9–

Lastly, from a common sense standpoint, it would not be reasonable for any person, including Dr. Kennedy, to commit himself to the receipt of royalties based on the prospective sale of a Machine where the royalties might last just one year but the Covenant Not To Compete as to that Machine could last for 20 or more years. Such an intent on the part of any contracting part would be manifestly unreasonable. Nobody having the capacity to contract would enter into an agreement where he bargained for one year of uncertain royalty payments and in exchange surrendered the right to compete for an indeterminate period of time which could run to 20 plus years, as is shown on the schematic chart attached as Exhibit "1".)

## *Conclusion*

Where a contract provision is capable of two or more reasonable interpretations, the Court will ascribe to the contract the meaning understood by the non-scrivener. In this case, Encore drafted an Agreement so lacking in clarity that the Agreement lends itself to multiple reasonable understandings. In particular, the Covenant Not To Compete Section 8 of the Agreement invites a dispute as to when the non-competition provision begins to run concerning "the Machine" portion of the contract. The more reasonable position is that of Dr. Kennedy, the non-scrivener defendant, who for a number of reasons, believes that the two subjects of the Agreement, the Product and the Machine, were treated differently regarding their respective durational components and their applications with respect to the Covenant Not To Compete.

Dr. Kennedy has not only set forth a reasonable position, viz, that the Covenant Not To Compete as to the Machine began running on June 25, 2006, but he has shown that Encore's position is unreasonable and requires a stretch to conclude that the contract language means the Covenant Not To Compete is the same for both the Product and the Machine.

{01654710.DOC 2}

Respectfully submitted,

**LEITNER, WILLIAMS, DOOLEY & NAPOLITAN, PLLC**

s/       M. Andrew Pippenger
M. Andrew Pippenger, Esq.
801 Broad Street – 3rd Floor
Chattanooga, TN  37402

*Counsel for Jay Kennedy, D.C.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 9th day of August, 2011, a true and exact copy of the foregoing has been served upon the following via the Court's ECF system or, if not a registered ECF recipient, via United States Mail, postage prepaid:

| | |
|---|---|
| T.O. Helton, Esq.<br>Sheri A. Fox, Esq.<br>Baker, Donelson, Bearman,<br>   Caldwell & Berkowitz, P.C.<br>1800 Republic Centre<br>633 Chestnut Street<br>Chattanooga, TN  37450-1800 | Robert E. Craddock, Jr.<br>Wyatt, Tarrant & Combs, LLP<br>1715 Aaron Brenner Drive, Suite 800<br>Memphis, TN 38120 |
| David J. Weaver, Esq.<br>515 Main Street<br>Johnstown, PA  15901 | |

s/ M. Andrew Pippenger
M. Andrew Pippenger