UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| ENCORE MEDICAL, L.P., | ) |
| | ) |
| *Plaintiff / Counter-Defendant*, | ) |
| | ) |
| v. | ) |
| | ) |
| JAY KENNEDY, *D.C.*, | ) |
| | ) Case No. 1:11-cv-187 |
| *Defendant / Counter-Claimant,* | ) |
| | ) Judge Mattice |
| v. | ) |
| | ) |
| GEOFFREY MISCOE; MIR-COM | ) |
| PRODUCTS, L.L.C.; BRYANNE | ) |
| ENTERPRISES, INC.; and MIG | ) |
| RUNNER, LLC, *a/k/a MRP*, | ) |
| | ) |
| *Defendants* | ) |

## MEMORANDUM AND ORDER

Before the Court are Defendants' various Motions to Dismiss for lack of personal

jurisdiction or, alternatively, to transfer this action to the Western District of Pennsylvania

(Docs. 21, 25, 27, 52, 54).

For the reasons stated herein, Defendants' Motions will be **DENIED IN PART** and

**GRANTED IN PART**. To the extent the Motions seek dismissal of this action based on a

lack of personal jurisdiction, they will be **DENIED**. To the extent the Motions request that

the Court transfer the action to the Western District of Pennsylvania pursuant to 28 U.S.C.

§ 1404(a), they will be **GRANTED**.

Further, because Plaintiff Encore Medical, L.P. ("Encore") timely responded to Dr.

Kennedy's Motion to Vacate (Doc. 12), the Court will **DENY** its Motion for an Extension of

Time (Doc. 17) as moot.

Finally, the Court notes at the outset that, in responding to Defendants' Motions, Plaintiff has alternatively requested that the Court permit limited discovery as to personal jurisdiction and conduct a hearing on that issue. (Doc. 31 at 25; Doc. 34 at 6-7; Doc. 63 at 21). The parties have made good use of the ample time the Court has afforded them, and they have addressed this issue thoroughly. Indeed, they have filed several hundred pages of written briefing, deposition and hearing transcripts, and supporting affidavits, all of which relate only to the narrow issues of personal jurisdiction and transfer of venue. At best, additional discovery and the conduct of a hearing on this issue would be cumulative. At worst, it would be a substantial waste of time. The Court will therefore **DENY** Plaintiff's requests to conduct limited discovery or hold a hearing as to personal jurisdiction.

## I.    BACKGROUND

Plaintiff filed this suit against Dr. Jay Kennedy in April 2009 in the Circuit Court of Hamilton County Tennessee. (Doc. 1). Litigation continued in that forum until June 2011, when Plaintiff filed amended its Complaint and named as additional Defendants: Geoffrey Miscoe; Mir-Com Products, L.L.C. ("Mir-Com"); Bryanne Enterprises, Inc. ("Bryanne"); and MiG Runner, L.L.C. ("MRP"). (Doc. 1-1).

Plaintiff is a Delaware limited partnership with its principal place of business in Texas. (Doc. 48 at 1). Mir-Com is a Pennsylvania limited liability corporation with its principal place of business in Pennsylvania. (Doc. 22-1). Bryanne is a Pennsylvania Corporation with its principal place of business in Pennsylvania. (*Id.*). MRP is a Pennsylvania limited liability company with its principal place of business in Pennsylvania. (*Id.*). Miscoe is a resident and citizen of Pennsylvania. (Doc. 22-1). Miscoe is the

managing member of Mir-Com, the president of Bryanne, and the managing member of MRP. (*Id.*).

According to Plaintiff's Second Amended Verified Complaint, Encore is a provider of various orthopedic devices, including decompression and traction systems used by chiropractors. (Doc. 48 at 4). In mid-2000, Dr. Kennedy approached Plaintiff and offered his assistance in developing improvements for use with Plaintiff's chiropractic products. (*Id.* at 7). Plaintiff believed Dr. Kennedy's improvements to be useful, and on June 25, 2002, it and Dr. Kennedy entered into a contract ("the Contract") concerning the manufacture, marketing, and distribution of certain traction/decompression systems. (*Id.*; Doc. 48-1). Among other things, the Contract provided that Dr. Kennedy: would disclose any inventions related to traction machines he devised during the Contract's term, was prohibited from revealing Plaintiff's confidential information, and would not participate in the creation or development of products that competed with Plaintiff's.[1] (Doc. 48 at 9-12; Doc. 48-1 at 3-4). Pursuant to a choice-of-law provision, the Contract was governed by Tennessee law. (Doc. 48-1 at 6).

In 2004, Plaintiff purchased the Chattanooga Group ("Chattanooga"), which became a division of Encore. (Doc. 48 at 2, 4). At the time of purchase, Chattanooga was based in Tennessee and manufactured traction tables and motorized decompression systems, including some that were the object of Dr. Kennedy's improvements. (*Id.* at 5-6, 12). At the time this case was removed to this Court, Chattanooga was still a division of Encore

---

[1] The term of the Contract is in dispute. (*See, e.g.*, Doc. 10 (Kennedy's "Motion for Summary Judgment as to the Counterclaim in Declaratory Judgment and as to the Amended Complaint.")). That dispute is not material to the purpose of this Order, which addresses only the parties' arguments concerning jurisdiction and transfer.

Medical, L.P., but it was no longer located in Tennessee – in 2009 and 2010, Plaintiff closed Chattanooga's only Tennessee facility. (*Id.* at 2 n.2).

Plaintiff alleged that, in contravention of the Contract's terms and during its defined period, Kennedy began engaging in competitive behavior. (*Id.* at 14). Specifically, Plaintiff asserted that Kennedy and the other Defendants developed and distributed several products – most notably the "Kennedy Decompression Table" ("Kennedy Table") – that competed with the decompression traction systems manufactured and distributed by Chattanooga and Encore. (*Id.* at 14-16). According to the Second Amended Verified Complaint, Defendants developed the Kennedy Table and marketed it at the expense of Plaintiff's products. (*Id.* at 17-20). Plaintiff contends that Defendants advertised and sold the competing products to chiropractors in Tennessee and that they thereafter conducted training seminars ("Kennedy Seminars") involving Tennessee customers. (*Id.* at 18-21).

In April 2009, Plaintiff filed the instant lawsuit in Tennessee state court. (Doc. 1, Doc. 1-1). After Plaintiff amended its complaint to include Miscoe, Mir-Com, Bryanne, and MRP, those Defendants removed the action to this Court. (Doc. 1). Plaintiff subsequently amended its Complaint a second time. (Doc. 48). In its Second Amended Verified Complaint, Plaintiff raised the following eleven causes of action: (1) "Count I - Breach of Product Agreement," against Dr. Kennedy; (2) "Count II - Breach of Covenant not to Compete," against Dr. Kennedy; (3) "Count III - Breach of Duty of Loyalty," against Dr. Kennedy; (4) "Count IV - Specific Performance," against Dr. Kennedy; (5) "Count V - Procurement of Breach of Contract," against Miscoe, Mir-Com, Bryanne, and MRP; (6) "Count VI - Conversion," against all Defendants; (7) "Count VII - Civil Conspiracy," against all Defendants; (8) "Count VIII - Unjust Enrichment," against all Defendants; (9) "Count IX -

-4-

Violation of the Tennessee Consumer Protection Act," against all Defendants; (10) "Count X - Intentional Interference with Business Relations or Prospective Business Relations," against all Defendants; and (11) "Count XI - Injunctive Relief," against all Defendants. (Doc. 48 at 27-39).

The parties have filed various Motions, including the instant Motions to dismiss this case for lack of personal jurisdiction or, alternatively, to transfer it to the United States District Court for the Western District of Pennsylvania. (*See* Docs. 21, 25, 27, 52, 54). Briefly put, the "moving Defendants" (i.e., Miscoe, Mir-Com. Bryanne, and MRP) first assert that they lack the "minimum contacts" with Tennessee that would permit the Court to exercise personal jurisdiction over them. (*See* Docs. 21, 25, 52, 54). Alternatively, they assert that, even if they are subject to the Court's jurisdiction, the convenience of the parties and the interests of justice demand that this case be transferred to the Western District of Pennsylvania. (*See* Docs. 21, 25, 52, 54). Dr. Kennedy joins the moving Defendants' request to transfer this case. (Doc. 27).

Plaintiff opposes the Motions. (Docs. 31, 34, 63). Plaintiff asserts that it has made out a *prima facie* case of personal jurisdiction. (Doc. 31; Doc. 63 at 4-5). It maintains that transfer is not appropriate because it would merely shift inconvenience from Defendant to Plaintiff. (Doc. 34; Doc. 63 at 5-8). Plaintiff requests that, if the Court determines it lacks jurisdiction over one or more of the Defendants, this action be transferred to the Western District of Pennsylvania pursuant to 28 U.S.C. § 1406. (Docs. 31, 34).

## II.     ANALYSIS

### 1.     Jurisdiction

Miscoe, Mir-Com, Bryanne, and MRP have all moved to dismiss this action for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  (Docs. 21, 52, 54).  Dr. Kennedy does not contest that he is subject to this Court's jurisdiction.  In the context of a Rule 12(b)(2) motion, a plaintiff bears the burden of establishing the existence of personal jurisdiction.  *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989)).  A district court may address such a motion on the parties' submissions or it may permit limited discovery and hold an evidentiary hearing.  *See id.*  When, as here, the Court does not conduct an evidentiary hearing and relies solely on written submissions and affidavits to resolve the Rule 12(b)(2) motion, "the plaintiff need only make a *prima facie* showing of jurisdiction. In this situation, [the Court] will not consider facts proffered by the defendant that conflict with those offered by the plaintiff, and [it] will construe the facts in a light most favorable to the nonmoving party." *Indah v. S.E.C.*, 661 F.3d 914, 920 (6th Cir. 2011) (quotation omitted).

In diversity cases, federal courts apply the law of the forum state, subject to constitutional limitations, to determine whether personal jurisdiction exists. *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998); *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994).  Thus, a court must look not only to the forum state's long-arm statute, but also to the due process requirements of the Constitution. *Aristech*, 138 F.3d at 627; *Reynolds*, 23 F.3d at 1115.  Tennessee's long-arm

statute, Tenn. Code Ann. § 20-2-214, expands the jurisdiction of Tennessee courts to the full limit permitted by due process. *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 645 (Tenn. 2009). When a state's long-arm statute reaches as far as the limits of the Due Process Clause, the two inquiries merge, and the Court need only determine whether the exercise of personal jurisdiction violates constitutional due process. *Aristech*, 138 F.3d at 627.

"Due process requires that a defendant have 'minimum contacts ... with the forum State ... such that he should reasonably anticipate being haled into court there.'" *Schneider v. Hardesty*, ___ F.3d ___, 2012 WL 573321 at *6 (6th Cir. 2012) (recommended for full text-publication) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980)). Such a requirement ensures that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice." *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Schneider*, 2012 WL 573321 at *6. Depending on the type of minimum contacts in a case, personal jurisdiction can take one of two forms: general or specific. *Air Prods.*, 503 F.3d at 550. Here, Plaintiff asserts that Defendants are subject to both general and specific personal jurisdiction.

"General jurisdiction is found where contacts 'are so continuous and systematic as to render [a foreign defendant] essentially at home in the forum State.'" *Schneider*, 2012 WL 573321 at *6 (alteration original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ___ U.S. ___, 131 S.Ct. 2846, 2851 (2011)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."

*Goodyear*, 131 S.Ct. at 2853-54. If a defendants' contacts are sufficiently continuous and systematic, the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state. *See Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005).

"In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to the adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Indah*, 661 F.3d at 920 (quoting *Goodyear*, 131 S.Ct. at 2851). That is, specific jurisdiction "exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997) (citing *Helicopteros Nacionales de Colombia S.A., v. Hall*, 466 U.S. 408, 414-415 & nn. 8-10 (1984)). The United States Court of Appeals for the Sixth Circuit has developed a three-pronged test to determine whether specific jurisdiction exists over a particular defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

The Court rejects Plaintiff's contention that the moving Defendants have established systematic and continuous contacts sufficient to justify the exercise of general personal jurisdiction. (*See* Doc. 31 at 10-16). Plaintiff identifies ten instances of contact between Tennessee and the moving Defendants: Miscoe and Bryanne's purchases from Chattanooga and attendant travel and training; Miscoe's participation in negotiating the

Contract between Kennedy and Encore; two examples of Miscoe's alleged conspiracy with Dr. Kennedy to violate the terms of the Contract; Miscoe's, Mir-Com's, and MRP's sale of the Kennedy Decompression Table and related "Kennedy Seminars" in Tennessee; Miscoe's, Mir-Com's, and MRP's offer of lifetime support to Tennessee customers of the Kennedy Table; all Defendants' maintenance of an interactive website accessible by Tennessee residents; Kennedy Seminar attendees' certification of their seminar participation as continuing education to the Tennessee Board of Chiropractic Examiners; all Defendants' alleged misrepresentation on marketing websites of the Kennedy Table's FDA-approval status; and all defendants' advertisements in national publications and periodic mass e-mails. (*Id.*).

Some of the contacts identified by Plaintiff do not implicate Tennessee. For instance, it is difficult to envision how Defendants' development of a product in Pennsylvania demonstrates that they established systematic contacts with Tennessee. Other alleged contacts clearly implicate Tennessee but were undertaken by third parties. For example, Tennessee-licensed chiropractors' decision to certify attendance at the Kennedy Seminar as a component of their continuing professional education is "unilateral activity of another party or a third person [that] is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales*, 466 U.S. at 417. While Plaintiff's other allegations may support the exercise of specific jurisdiction over certain Defendants, they do nothing to suggest that Defendants' contacts are so continuous and systematic as to render them "essentially at home" in Tennessee. *Goodyear*, 131 S.Ct. at 2851. Thus, the exercise of general personal jurisdiction is inappropriate. *See id.*; *Schneider*, 2012 WL

573321 at *6.

Plaintiff next maintains that Defendants are subject to the specific personal jurisdiction of this Court. As above, in order for the exercise of specific jurisdiction to be appropriate: (1) Defendants must have purposefully availed themselves of the privilege of acting or causing a consequence in Tennessee; (2) the cause of action must arise from the Defendants' activities in Tennessee; and (3) Defendants' acts or their consequences must have a substantial enough connection with Tennessee to make the exercise of jurisdiction reasonable. *Mohasco*, 401 F.2d at 381.

"The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Air Prods.*, 503 F.3d at 551 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The Supreme Court has "consistently rejected the notion that an absence of physical contacts [with the forum state] can defeat personal jurisdiction there." *Burger King*, 471 U.S. at 475; *see Air Prods.*, 503 F.3d at 551. Rather, jurisdiction is proper where "the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Burger King*, 471 U.S. at 475 (emphasis omitted); *see Air Prods.*, 503 F.3d at 551. "In particular, where a defendant has created continuing obligations between himself and the residents of the forum, he manifestly has availed himself of the privilege of conducting business there." *Air Prods.*, 503 F.3d at 551 (citing *Burger King*, 471 U.S. at 476) (internal quotations omitted).

The second prong of the *Mohasco* test is that the plaintiff's cause of action must

"arise from" the contacts with the forum state. *Mohasco*, 401 F.2d at 381. The Sixth Circuit has articulated this standard in a variety of ways, including "whether the causes of action were 'made possible by' or 'lie in the wake of' the defendant's contacts, or whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state." *Air Prods.*, 503 F.3d at 553 (citing *Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003); *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 909 (6th Cir. 1988). This is a "lenient standard," and the cause of action need not "formally" arise from the defendant's contacts. *Schneider*, 2012 WL 573321 at *9; *Air Prods.*, 503 F.3d at 553 (quoting *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)).

Finally, the third prong of the *Mohasco* test requires that the defendant have a substantial connection to the forum such that the exercise of jurisdiction is not unreasonable. *Mohasco*, 401 F.2d at 381. "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable," and where the first two criteria are met, "an inference of reasonableness arises and only the unusual case will not meet the substantial connection criterion." *Schneider*, 2012 WL 573321 at *9 (quotation and alteration omitted).

In this case, although personal jurisdiction is by no means readily apparent, the Court concludes that it has specific jurisdiction over the moving Defendants. Because the Court relies solely on written submissions and affidavits to resolve the jurisdictional issue, the burden on Plaintiff is "relatively slight." *See Air Prods.*, 503 F.3d at 549 (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)). The Court has disregarded

-11-

facts proffered by Defendants that conflict with those offered by Plaintiff, and it has viewed all submissions in the light most favorable to Plaintiff. *See Indah*, 661 F.3d at 920 (6th Cir. 2011). It is only through this forgiving lens that Plaintiff has made a *prima facie* showing of jurisdiction. Nevertheless, Plaintiff has met its burden.

Plaintiff has produced evidence demonstrating that Miscoe assisted Dr. Kennedy in negotiating the Contract and was fully aware of its terms, including its submission to Tennessee law. (Doc. 31-3 at 3-4). Miscoe, in his capacity as Bryanne's president, traveled to Tennessee on multiple occasions to attend sales meetings and "boot camp" training sessions, and he purchased from Chattanooga more than $2.5 million in products for resale. (Doc. 32 at 1-3). Plaintiff's evidence suggests that Miscoe's visits took place while Dr. Kennedy was still bound by the terms of the Contract and while Miscoe and Kennedy were collaborating to effect its breach. (*See* Doc. 31-1 at 13; Doc. 31; Doc. 32 at 1-3).

The moving Defendants developed the Kennedy Table and the Kennedy Seminars, which they then marketed on websites, via e-mail, and in various trade publications. (Doc. 22-1 at 2-3; Doc. 31-2 at 58-66; Doc. 32 at 3-10). The trade publication subscribers and e-mail recipients included Tennessee residents, and while Defendants may not have specifically known of the Tennessee recipients, it is reasonable to assume that these marketing efforts took place at Defendants' direction. (Doc. 22-1 at 2). These advertisements and websites listed Mir-Com's contact information and identified Bryanne as the point of sale. (*See* Doc. 32 at 6-10).

Perhaps most significantly, Defendants sold the Kennedy Table and the Kennedy Seminar to Tennessee Residents. (Doc. 22-1 at 3). In the "three or four" years preceding

-12-

this litigation, "Tennessee residents have purchased approximately 22 seminars and 10 chiropractic tables/decompression systems developed and marketed by Mir-Com." (*Id.* at 4). According to Defendants' advertisements, the Tennessee residents who purchased the tables and seminars would be entitled to "lifetime clinical support" and included in a database to facilitate referrals from other seminar attendees. (Doc. 32 at 4). Miscoe acknowledged that he had contact with Tennessee residents related to their purchases. (Doc. 22-1 at 4).

In sum, Miscoe – in his capacity as the moving Defendants' executive – traveled to Plaintiff's now-defunct Tennessee facility on multiple occasions to purchase millions of dollars worth goods and receive sales training. Thereafter, Defendants manufactured, marketed, and distributed products to Tennessee residents. They implied that those residents would receive professional advantages, and they promised those residents lifetime support. Miscoe himself followed up with the Tennessee residents regarding their purchases. Viewing this evidence most favorably to Plaintiff, it appears that Defendants deliberately developed a substantial connection with Tennessee and created continuing professional obligations to its citizens. Consequently, the Court concludes that Defendants purposefully availed themselves of the privilege of doing business in Tennessee. *See Burger King*, 471 U.S. at 475; *see Air Prods.*, 503 F.3d at 551; *Youn*, 324 F.3d at 419.

Plaintiff has also established the last two *Mohasco* elements. *See Mohasco*, 401 F.2d at 381. According to Plaintiff, the products and seminars sold in Tennessee that establish Defendants' minimum contacts with this state are at least part of the contractual breach on which the instant suit is based. (*See, e.g.*, Doc. 31 at 21; Doc. 48 at 12-14, 17-20). Thus, the "causes of action are 'related to' or 'connected with' the defendant's contacts

-13-

with the forum state," and the second component of the Court's jurisdictional analysis is satisfied. *Air Prods.*, 503 F.3d at 553; *see Youn*, 324 F.3d at 419; *Mohasco*, 401 F.2d at 381.

Finally, because Defendants purposefully availed themselves of Tennessee contacts to which this suit is related, the Court infers that the exercise of jurisdiction is reasonable. *See Schneider*, 2012 WL 573321 at *9. Although this case is due to be transferred, Defendant has presented no evidence establishing that it is an "unusual case," in which the exercise of jurisdiction is so unreasonable as to abandon the inference to the contrary and prevent this Court from acting. *See id.* (addressing certain considerations that bear on whether the exercise of jurisdiction is unreasonable). Consequently, *Mohasco*'s third prong is fulfilled. *See id.*; *Mohasco*, 401 F.2d at 381.

Accordingly, the exercise of specific jurisdiction over Defendants in this Court comports with due process, and the Court will therefore **DENY** Defendants' Motions (Docs. 21, 25, 27, 52, 54) insofar as they request dismissal based on a lack of personal jurisdiction.[2]

### 2.     Transfer

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) is permissive in nature, and as its

---

[2] Even if the Court were to find that it lacked personal jurisdiction over one or more Defendants, the ultimate disposition of the pending Motions would be identical. Were this Court to conclude that personal jurisdiction was lacking, the appropriate disposition of the Motions would be a transfer to the Western District of Pennsylvania pursuant to 28 U.S.C. § 1406(a) rather than outright dismissal. *See, e.g., Jackson v. L & F Martin Landscape*, 421 F. App'x 482, 483-84 (6th Cir. 2009) (holding that a district court abused its discretion by dismissing a case for lack of personal jurisdiction without first considering whether a transfer under § 1406(a) would be appropriate).

language suggests, "district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate." *Reese v. CNH Am., LLC*, 574 F.3d 315, 320 (6th Cir. 2009). Although the exercise of personal jurisdiction is appropriate in the Eastern District of Tennessee, the Court will transfer this case to the Western District of Pennsylvania in the interests of convenience and justice.

Naturally, when addressing a motion to transfer, the Court will consider the factors defined by the language of the statute: the convenience of parties, the convenience of witnesses, and the interests of justice. 28 U.S.C. § 1404(a). The Court will also take into account "other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir.1991). The Sixth Circuit has suggested that the Court may consider several other factors, including: the accessibility of evidence; the availability of process to make reluctant witnesses testify; the locus of operative facts giving rise to the dispute; the costs of obtaining willing witnesses; the practical problems of trying the case most expeditiously and inexpensively; and the plaintiff's chosen forum. *Reese*, 574 F.3d at 320.

Courts read § 1404(a) to require a two-step analysis. *See, e.g.*, *Roberson v. Estate of Jones*, Case No. 1:06-cv-265, 2007 WL 760376 at *1 (E.D. Tenn. Mar. 8, 2007). First, the Court must determine whether the action is one which could have been brought initially in the proposed transferee district. *See id.* Second, the Court must examine whether the balance of interests favors transfer to the alternative forum. *See id.* There is no dispute that this action could have been brought in the Western District of Pennsylvania: there is complete diversity among the parties, and all Defendants reside there. *See* 28 U.S.C.

-15-

§§ 1332, 1391.

Turning now to the second analytical step, the relevant considerations weigh in favor of transfer, and not only slightly. Perhaps most notably, no party to this litigation – including Plaintiff – is a citizen of Tennessee.[3] (Doc. 48 at 1-2). Conversely, each of the five Defendants is a citizen of Pennsylvania. (*Id.*). The conduct of these proceedings in Pennsylvania would prove significantly more convenient to Defendants, and such party convenience is especially noteworthy in view of the fact that Plaintiff is already litigating outside its home forum. It merits further consideration that, given Defendants' uniform residence and the nature of this dispute, several key sources of proof (e.g., product designs, meeting notes, syllabi for the Kennedy Seminars, advertising material, etc.) will be more readily accessible in Pennsylvania. Indeed, most of the exhibits and testimony submitted by both parties in connection with the instant Motions were, in fact, generated in Pennsylvania. (*See, e.g.*, Doc. 22-1 at 5; 22-2 at 3; Doc. 31-1 at 3; Doc. 31-2 at 2; Doc. 32 at 1).

Further, the conduct on which this lawsuit is based largely occurred in Pennsylvania. Dr. Kennedy and Miscoe negotiated and executed the Contract at issue in Pennsylvania. (Doc. 31-3 at 3-4). The Contract was allegedly breached there. Miscoe approached Kennedy about engaging in the complained-of behavior in Pennsylvania; the allegedly competitive products were created in Pennsylvania; and Mir-Com, MRP, and Bryanne – the companies who manufactured, marketed, and distributed the purportedly competitive

---

[3] "[A] limited partnership is a citizen of each state in which its partners (general or limited) are citizens." *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 672 (6th Cir. 2004) (citation omitted). Plaintiff's partners are both wholly-owned subsidiaries of DJO Global, Inc.. (Doc. 19). Plaintiff represents that it is a Delaware partnership with a principal place of business in Texas. (*See, e.g.*, Doc. 48 at 1).

products – are all located exclusively in Pennsylvania. (Doc. 22-1 at 2-4; 31-1 at11-12, 20-22; Doc. 31-2 at 17, 21). Likewise, the conduct giving rise to Plaintiff's recently-added claim of "intentional interference with business relations or prospective business relations" (i.e., Defendants' alleged conspiracy to lure customers away from Encore products) also occurred in Pennsylvania, inasmuch as the Court assumes that the Defendants did not travel out of state for the sole purpose of discussing how best to damage Plaintiff. (Doc. 48 at 35-38). Thus, taken together and considered as a whole, the locus of operative facts in this action is firmly rooted in Pennsylvania.

While Plaintiff has identified four witnesses who are located in Tennessee, it freely acknowledges that witnesses may be located in several states, including: Tennessee, Pennsylvania, Arkansas, Wisconsin, Illinois, California, Ohio, and Texas. (Doc. 32; Doc. 32-1; Doc. 63 at 6). The Court affords weight to the inconvenience transfer may cause to the four Tennessee witnesses, but it notes that such inconvenience to those witnesses is counterbalanced by the benefit provided to Pennsylvania witnesses, including Chris Peetros, Plaintiff's own employee who verified the Second Amended Verified Complaint. (*See* Doc. 32-1; Doc. 35-4 at 3-4; Doc. 48 at 41).[4]

Public-interest considerations also suggest that transfer is appropriate. A Pennsylvania court has an interest in litigating a dispute that involves its own citizens and

---

[4] Plaintiff points out that a Pennsylvania court would be unable to compel the attendance of reticent out-of-state witnesses. (*See* Doc. 63 at 7) (addressing witnesses from Texas and Arkansas). Plaintiff has not, however, identified how this Court would be in any better position in that regard. *See* Fed. R. Civ. P. 45(b)(2), (c)(3) (providing that, upon motion, a court must quash or modify a subpoena that, among other things, "requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business . . . ."); *see also* Fed. R. Civ. P. 45(a)(2)(B) (providing that a subpoena "for attendance at a deposition [must issue] from the court for the district where the deposition is to be taken").

allegedly tortious conduct that occurred on its own soil. *See, e.g., Rogal v. Skilstaf, Inc.*, 446 F. Supp. 2d 334, 337-38 (E.D. Pa. 2006) (addressing the competing interests of a transferring court and a receiving court and noting that each "has an interest in protecting the interests of citizens . . . who reside within [its] district"). This Court has no such connection to this litigation and, consequently, no such interest. Similarly, were Plaintiff to prevail in this action, a Pennsylvania court is in a more convenient position to enforce a judgment against citizens in its own district.

As Plaintiff correctly notes, it appears that Tennessee law will govern any issues arising out of Defendants' alleged breach of the Contract and related violation of the Tennessee Consumer Protection Act. (*See* Doc. 48 at 28-30, 34; Doc. 48-1 at 6). In general, this preponderates against transfer. However, it is not unusual for a federal court to apply the law of states other than one in which it sits, and the Court is confident that the District Court for the Western District of Pennsylvania will be able to apply these fairly straightforward principles of Tennessee law without great difficulty. *See, e.g., Univ. of Pittsburgh v. Townsend*, 542 F.3d 513, 521 (6th Cir. 2008) (addressing a case transferred to this Court from the Western District of Pennsylvania, in which this Court applied Pennsylvania contract law). More to the point, it is by no means clear that Tennessee substantive law will govern Plaintiff's tort claims, although that issue will ultimately be left to the sound judgment of the Pennsylvania court. *See, e.g., Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009) (noting that, in diversity actions, the choice-of-law rules of the forum state apply and that, under Tennessee law, "the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the

-18-

litigation"); *Townsend*, 542 F.3d at 521 ("[W]hen a case is transferred pursuant to 28 U.S.C. § 1404(a), the receiving court must apply the choice of law of the transferring court.").

Plaintiff has raised various other arguments against transfer, all of which lack merit. First, Plaintiff asserts that Defendants have not overcome the "strong deference given Encore's choice of venue." (Doc. 63 at 5; *see* Doc. 34 at 2-3). Plaintiff's position is somewhat puzzling, as the Eastern District of Tennessee is *not* Plaintiff's chosen venue. Rather, Plaintiff elected to file suit in the Circuit Court of Hamilton Country Tennessee, and the case came before this Court only upon the moving Defendants' Notice of Removal. (*See* Doc. 1; Doc. 1-1). Even assuming that Plaintiff's decision to file suit in Tennessee state court suggests that litigation should proceed in the Eastern District of Tennessee, that consideration is still substantially outweighed by factors militating in favor of transfer, especially since Tennessee is not Plaintiff's home state, and very little of the complained-of conduct occurred in Tennessee.[5]

Plaintiff notes that litigation has been ongoing in the Circuit Court for Hamilton County, and it therefore contends that a transfer would unfairly require it to "essentially begin this litigation a third time." (Doc. 34 at 4). The Court is not persuaded by Plaintiff's argument. Since this case was removed from state court, no trial date has been set and

---

[5] The Court rejects Plaintiff's repeated characterization of itself as a "Tennessee corporation" and a "Tennessee company." (*See, e.g.,* Doc. 31 at 11; Doc. 34 at 4). Frankly, the Court is somewhat surprised that Plaintiff must be reminded that it is neither a corporation nor a Tennessee entity. According to its own pleadings, Encore is a Delaware limited partnership that once possessed a now-defunct facility in Tennessee. (*See* Doc. 19; Doc. 48 at 1-2); *see also, e.g., Schwartz v. Elec. Data Sys.*, 913 F.2d 279, 284 (6th Cir. 1990) ("A division of a corporation does not possess the formal separateness upon which the general rule is based, and thus is not an independent entity for jurisdictional purposes."). Plaintiff's mischaracterization of itself does not militate against transfer.

no scheduling order entered. Regardless of whether federal proceedings take place in Pennsylvania or Tennessee, the parties will be required to "restart" litigation.

Plaintiff also contends that it would suffer prejudice in retaining new counsel and "educating the Pennsylvania court on the law and facts of a case that has been pending for over two years." (Doc. 34 at 5-6). Inasmuch as Plaintiff suggests that transfer is inappropriate because it will be forced to explain state court proceedings to the Pennsylvania federal court, its claim implies that it will be spared that burden in a Tennessee federal court. Plaintiff's position is unavailing: despite this Court's geographic proximity to the Hamilton County Circuit Court, it possesses no special insight into this case's procedural posture, which Plaintiff would be expected to address as thoroughly here as in any other forum. To the extent that the substitution of counsel is a burden, it is a burden borne by both parties, imposed in the interests of justice and convenience.

Finally, citing a 1975 Tennessee state court case, Plaintiff asserts that "the fact that Plaintiff's Chattanooga division relocated since the filing of this lawsuit does not alter the propriety of venue, which is determined at the time of filing." (Doc. 34 at 6) (citing *Mid-South Milling Co., Inc. v. Loret Farms, Inc.*, 521 S.W.2d 586, 589 (Tenn. 1975)). Plaintiff's argument is inapposite. Even assuming *arguendo* that Encore's prior ownership of a Tennessee facility bears on the Court's § 1391 venue analysis, that facility is now gone, and Plaintiff now has no apparent physical connection to Tennessee. (Doc. 48 at 2 n.2). The Chattanooga Group's erstwhile presence in this state in no way suggests that it is now more convenient or more just to continue litigation here as opposed to the Western District of Pennsylvania.

In short, this case involves some claims governed by Tennessee law, and it

implicates the testimony of four Tennessee witnesses. Conversely: no party is a citizen of Tennessee and no party has identified any present physical connection to this state; all Defendants are citizens of Pennsylvania; several other witnesses reside in Pennsylvania; key evidence is likely to be more accessible in Pennsylvania; the Contract at issue was negotiated in Pennsylvania; Defendants allegedly breached the Contract and engaged in related tortious conduct in Pennsylvania; and the Pennsylvania court has an interest in adjudicating a dispute involving its citizens based on acts that allegedly took place in its district. Upon consideration of these facts, the others described above, and all parties' arguments, the Court concludes that Defendants have demonstrated substantial interests of convenience and justice meriting transfer pursuant to 28 U.S.C. § 1404(a).

Consequently, the Court will **GRANT** Defendants' Motions (Docs. 21, 25, 27, 52, 54) insofar as they request transfer of this action to the Western District of Pennsylvania.

## IV.    CONCLUSION

Accordingly, and for the reasons stated:

Plaintiff's Motion for Extension of Time (Doc. 17) is hereby **DENIED AS MOOT**;

Defendants' Motions (Docs. 21, 25, 27, 52, 54) are hereby **DENIED IN PART** and **GRANTED IN PART**. To the extent the Motions seek dismissal of this action based on a lack of personal jurisdiction, they are hereby **DENIED**. To the extent the Motions request that the Court transfer this action pursuant to 28 U.S.C. § 1404(a), they are hereby **GRANTED**; and

The Clerk is **DIRECTED** to transfer the file in this case to the Western District of Pennsylvania.

**SO ORDERED** this 21st day of March, 2012.


                                        _____/s/Harry S. Mattice, Jr._____
                                        HARRY S. MATTICE, JR.
                                        UNITED STATES DISTRICT JUDGE